Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
**MANNING LAW, APC**
20062 SW Birch Street, Ste. 200
Newport Beach, CA 92660
Office: (949) 200-8755
Fax: (866) 843-8308
DisabilityRights@manninglawoffice.com

Attorney for Plaintiff SOFIA ECHEVERRIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOFIA ECHEVERRIA, an individual<br><br>Plaintiff,<br><br>v.<br><br>TOPLINE NAILS, INC., a California corporation; TOPLINE HAIR AND EYELASHES LLC, a California limited liability company; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>**Complaint for Injunctive Relief and Damages for:**<br><br>1. Violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 *et seq.*;<br>2. Violations of California's Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*;<br>3. Intentional Infliction of Emotional Distress; and,<br>4. Negligent Infliction of Emotional Distress |

Plaintiff, SOFIA ECHEVERRIA, an individual, ("Plaintiff") complains of Defendant TOPLINE NAILS, INC., a California corporation; Defendant TOPLINE HAIR AND EYELASHES LLC, a California limited liability company; and Does 1-10 ("Defendants") and alleges as follows:

## **PARTIES**

1. Plaintiff is an adult California resident. Plaintiff is substantially

**COMPLAINT**
1

limited in performing one or more major life activities because she has muscular dystrophy and relies upon a wheelchair, including, but not limited to: walking, standing, moving about, sitting, and driving. As a result of these substantial limitations, Plaintiff requires the use of a motorized wheelchair for mobility and a nurse for assistance. With such disabilities, Plaintiff qualifies as a member of a protected class under the Americans with Disabilities Act, 42 U.S.C. §12102(2) as amended by the ADA Amendments Act of 2008 (P.L. 110-325) ("ADA") and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq. Further, as is her routine, custom, and habit; Plaintiff travels with, and relies on, her motorized wheelchair as well as Access ride services (Los Angeles County ADA Complementary Paratransit) to accomplish basic tasks and errands. At the time of Plaintiff's visit to the Business and prior to instituting this action, Plaintiff suffered from a "qualified disability" under the ADA, including those set forth in this paragraph. Plaintiff is also the holder of a Disabled Person Parking Placard.

2. Plaintiff is informed and believes and thereon alleges that Defendant TOPLINE NAILS, INC., a California corporation, owned and operated the nail salon business located at 9302 Whittier Blvd, Pico Rivera, CA 90660 on August 3, 2019.

3. Plaintiff is informed and believes and thereon alleges that Defendant TOPLINE HAIR AND EYELASHES LLC, a California limited liability company, owned and operated the hair and eyelashes salon business located at 9336 Whittier Blvd, Pico Rivera, CA 90660 on August 3, 2019.

4. Plaintiff is informed and believes and thereon alleges that Defendant TOPLINE NAILS, INC. and Defendant TOPLINE HAIR AND EYELASHES LLC (collectively, the "Businesses") own their respective Businesses currently.

5. The Businesses are a nail, hair, and eyelash salons open to the

public, which are "place[s] of public accommodation" as that term is defined by 42 U.S.C. § 12181(7).

6. Plaintiff is informed and believes and thereon alleges that the Businesses are related in that the purported manager of each salon is the same person who calls herself "Jennifer." Jennifer also operates social media accounts for each salon.

7. Plaintiff does not know the true name of DOE Defendants, that may be related to the Businesses and/or properties. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, are responsible in some capacity for the events herein alleged. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the ADA.

9. This court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, because Plaintiff's Unruh Civil Rights Act, California Civil Code § 51 *et seq*., ("UCRA") claims are so related to Plaintiff's federal ADA claims in that they have the same nucleus of operative facts and arising out of the same transactions, they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in this court pursuant to 28 U.S.C. §1391 because the locations of real property which are the subject of this action are located in this district and because Plaintiff's causes of action arose in this district.

## FACTUAL ALLEGATIONS

11. Plaintiff contacted Defendant TOPLINE NAILS, INC. ("Topline Nails") on April 4, 2019 via a message on the social media platform Instagram in order to inquire as to whether Topline Nails could accommodate patrons who are wheelchair dependent. A representative from Topline Nails responded to Plaintiff, "[y]es of course!"

12. On August 3, 2019, Plaintiff traveled to Topline Nails in order to obtain a pedicure. Plaintiff traveled to Topline Nails in particular because a representative at Topline Nails assured her it could accommodate wheelchair dependent patrons. Plaintiff was excited to have found a nail salon that could accommodate her.

13. Plaintiff's nurse traveled with Plaintiff and entered Topline Nails with Plaintiff.

14. Plaintiff informed a manager who called herself "Jennifer" that she would like a pedicure. Jennifer asked if Plaintiff could be transferred out of her wheelchair. Plaintiff told Jennifer that she could not. Jennifer then said Topline Nails could not accommodate Plaintiff because they did not have a bucket to put her feet in.

15. Plaintiff was shocked and dismayed that Defendant's previous assurance that they would accommodate wheelchair dependent patrons turned out to be a misrepresentation.

16. Plaintiff saw what she thought was another nail salon close by. Plaintiff and her nurse traveled across the parking lot to the business of Defendant TOPLINE HAIR AND EYELASHES LLC ("Topline Hair and Lashes"). Plaintiff quickly realized that Topline Hair and Lashes was related to Topline Nails because of the common name and because Jennifer was apparently the manager for both businesses. Plaintiff's nurse inquired with the staff inside

Topline Hair and Lashes if Plaintiff could get a pedicure there. A male nail technician inside said he could do the pedicure but that he would not be able place Plaintiff's feet in water because he did not have bucket. Plaintiff agreed to have the pedicure without the water bucket.

17. While Plaintiff was waiting her turn for the nail technician at Topline Hair and Lashes, Jennifer came over from Topline Nails. Jennifer asked Plaintiff's nurse if the nurse was there to get her eye lashes done. The nurse told Jennifer that she and Plaintiff were there to get Plaintiff a pedicure. Jennifer looked at Plaintiff and said, "but we can't do it." Plaintiff and her nurse explained to Jennifer what that the male nail technician said he could do the pedicure. Jennifer spoke with the male technician in a different language and then left.

18. Plaintiff continued to wait at Topline Hair and Lashes while other able-bodied patrons at the location were being helped in front of Plaintiff. Plaintiff felt frustrated and felt as if she was being pushed around like a piece of furniture. Plaintiff waited for an hour and fifteen minutes and no one at Topline Hair and Lashes helped her. Plaintiff had an Access ride scheduled to pick her up at 4:50 p.m. and it was already 4:15 p.m. At this time, Plaintiff's nurse asked the receptionist why Plaintiff had not been helped. The receptionist said that the employees of Topline Hair and Lashes did not feel comfortable touching Plaintiff and giving her a pedicure. Plaintiff's nurse said she wanted to speak with the business's manager. Instead of being polite and accommodating as she was with able-bodied patrons, Jennifer came over again and said, "what's going on!?" Plaintiff's nurse asked Jennifer why Plaintiff had not been helped while other able-bodied patrons had come and gone. Jennifer began to raise her voice and said that Plaintiff's feet in her wheelchair were "too low for [her] workers to bend down" and that to do so would be "inconvenient." Jennifer then pointed at

Plaintiff's feet and exclaimed: "Look! Her toes are stuck together! Together! Look! Look!" Plaintiff's toes are not stuck together. Nevertheless, other employees and patrons began to stare at Plaintiff and her feet.  Due to Jennifer's shockingly offensive comments, spoken loudly in a public space, Plaintiff felt extreme shame and humiliation. Plaintiff felt intense anxiety to the point where her whole body began to sweat and she began to hyperventilate.

19. Plaintiff elevated her motorized wheelchair up in the air to demonstrate that the height of her feet would not be an issue. At the same time, the receptionist and the male technician tried to convince Jennifer that they should treat everyone equally. When Plaintiff's nurse pointed out that Plaintiff could elevate here wheelchair, Jennifer attempted to get another technician who called herself Sally to do Plaintiff's pedicure. Sally refused.

20. Plaintiff was angry and utterly humiliated, and she rushed out of the Topline Hair and Lashes in tears.

21. Plaintiff later wrote about her experience on the social media application Instagram and tagged Topline Nails in the post. On information and belief, staff from Topline Nails also operates the social media accounts for Topline Hair and Lashes. In response to Plaintiff, Topline Nails blocked Plaintiff's account on Instagram. The receptionist from Topline Hair and Lashes later sent Plaintiff a private message and apologized for what happened to Plaintiff.

22. Plaintiff was traumatized by the way she was treated by Defendants. After the incident, Plaintiff experienced physical symptoms including nausea, lack of appetite, and an excruciating headache. Plaintiff's self esteem was destroyed and Plaintiff continues to struggle with insecurities as a result.

23. In clear violation of the ADA and the UCRA, Plaintiff was directly discriminated against on the basis of her disability.

24. Due to Plaintiff's extreme treatment and denial of access at the Businesses, Plaintiff also alleges, on information and belief, that Defendants have no policy in place for treatment or accommodation of persons with disabilities.

25. As an individual with a mobility disability who relies upon a wheelchair, Plaintiff has a keen interest in whether public accommodations have access barriers that impede full accessibility to those accommodations by individuals with mobility impairments.

26. Plaintiff is being deterred from patronizing the Businesses and their accommodations on particular occasions, but intends to return to the Businesses for the dual purpose of availing herself of the goods and services offered to the public and to ensure that the Businesses cease evading their responsibilities under federal and state law.

27. As a result of the extreme behavior experienced by Plaintiff at the Businesses, Plaintiff was denied full and equal access to the Businesses.

28. The U.S. Department of Justice has emphasized the importance of enforcing laws that prohibit unlawful discriminatory behavior, especially in the era of the COVID-19 emergency. *See Statement by Assistant Attorney General for Civil Rights Eric S. Dreiband* Protecting Civil Rights While Responding to the Coronavirus Disease 2019 (COVID-19) found at https://www.ada.gov/aag_covid_statement.pdf.

29. Given the obvious and blatant violation alleged hereinabove, Plaintiff alleges, on information and belief, that there are other violations and barriers in the sites that relate to her disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once she conducts site inspections. However, the Defendants are on notice that the Plaintiff seeks to have all barriers related to her disability remedied. See *Doran*

*v. 7-11,* 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, the plaintiff can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

30. Without injunctive relief, Plaintiff will continue to be unable to fully access Defendants' facilities in violation of Plaintiff's rights under the ADA.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181 *et seq*. as amended by the ADA Amendments Act of 2008 (P.L. 110-325)

31. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

32. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods, and services of any place of public accommodation are offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D".

       c.     A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the area, are readily accessible to and usable by individuals with disabilities.  42 U.S.C. § 12183(a)(2).

33. Here, Defendants failed to make reasonable modifications in their policies, practices, or procedures in order to provide an advertised service for Plaintiff and then berated Plaintiff until she was forced to leave the Businesses in clear violation of the law.

34. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities.  28 C.F.R. § 36.211(a).

35. Here, the failure to ensure that accessible facilities were available and ready to be used by Plaintiff is a violation of law.

36. Given their locations and options, Plaintiff will continue to desire to patronize the Businesses but she has been and will continue to be discriminated against due to the unacceptable behavior of Defendants' employees and the lack of accessible facilities and, therefore, she seeks injunctive relief for Defendants to remediate Defendants' policies, practices, and procedures and current lack of accessibility to those with disabilities such as Plaintiff.

//

//

## SECOND CAUSE OF ACTION
## VIOLATION OF THE UCRA, CALIFORNIA CIVIL CODE § 51 *et seq.*

37. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

38. California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendants violated and are continuing to violate the UCRA, Civil Code § 51 *et seq*.

39. Because Defendants violate Plaintiff's rights under the ADA, Defendants also violated the UCRA and are liable for damages. (Civ. Code § 51(f), 52(a).) These violations are ongoing.

40. Plaintiff is informed and believes and thereon alleges that Defendants' actions constitute discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq*., because Defendants have been previously put on actual or constructive notice that the Businesses are inaccessible to Plaintiff. Despite this knowledge, Defendants maintain the Businesses in an inaccessible manner, and Defendants have failed to take actions to correct barriers to accessibility.

## THIRD CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

42. Defendants' conduct caused Plaintiff to suffer severe emotional distress.

43. Defendants' conduct was outrageous because it goes beyond all possible bounds of decency. Defendants' conduct was outrageous because a reasonable person would regard the conduct as intolerable in a civilized community.

44. Defendants own or operate Businesses that offers goods or services to the public. Defendants denied access to these goods and services to Plaintiff with no justification. When Plaintiff tried to access Defendants' goods and services, principals and/or employees of the Businesses insulted and humiliated Plaintiff until she was forced to leave. Defendants knew that their denial of access and their lack of policies, practices, and procedures that led to the outrageous behavior of their principals and/or employees would cause severe emotional distress to Plaintiff and any other disabled persons who had the misfortune of entering the Businesses.

45. Defendants intended to cause Plaintiff's severe emotional distress or Defendants acted with reckless disregard for the probability that Plaintiff would suffer emotional distress.

46. Plaintiff suffered severe emotional distress including, anguish, nervousness, grief, anxiety, worry, shock, humiliation, shame, loss of appetite, nausea, headache, and permanent loss of self-esteem.

47. Defendants' conduct caused Plaintiff's severe emotional distress.

48. The acts and/or omissions of Defendants caused Plaintiff to suffer harm and economic damage. Plaintiff is informed and believes that she may incur damage in the future in amounts according to proof at trial.

49. In committing the acts and/or omissions alleged, Defendants have been guilty of malice, fraud, or oppression and, therefore, Plaintiff seeks an award of punitive damages against Defendants according to proof at trial.

# FOURTH CAUES OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

50. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

51. Because Defendants owned and/or operated public places of accommodation, Defendants owed a duty to the general public, and to Plaintiff in particular, to use reasonable care to when accommodating disabled persons.

52. Defendants failed and neglected to use reasonable care in the accommodation of Plaintiff and, as a result of their negligence and carelessness, Plaintiff suffered severe emotional distress as she was insulted and embarrassed in front of onlookers.

53. As a direct, legal, and proximate result of Defendants' negligence, Plaintiff has sustained severe, serious, and permanent injuries to her person, all to her damage in an amount to be shown according to proof.

54. The negligent conduct as alleged was an actual and proximate cause of severe emotional distress suffered by Plaintiff

55. That as a direct, legal and proximate result, Plaintiff has sustained severe, serious, and permanent emotional distress.

56. As direct and proximate cause of Defendants' breach, Plaintiff has sustained general and special damages to be proven at trial.

## PRAYER

**WHEREFORE, Plaintiff prays that this court award damages provide relief as follows:**

1. A preliminary and permanent injunction enjoining Defendants from further violations of the ADA, 42 U.S.C. § 12181 *et seq.* as amended by the ADA Amendments Act of 2008 (P.L. 110-325), and UCRA, Civil Code § 51 *et*

*seq.* with respect to their operation of the Businesses; Note: Plaintiff is not invoking section 55, *et seq*, of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act (Cal. C.C. §54) at all.

2. An award of actual damages and statutory damages of not less than $4,000 per violation pursuant to § 52(a) of the California Civil Code;

3. An additional award of $4,000.00 as deterrence damages for each violation pursuant to *Johnson v. Guedoir,* 218 F. Supp. 3d 1096; 2016 U.S. Dist. LEXIS 150740 (USDC Cal, E.D. 2016);

4. Treble actual damages, pursuant to Cal. Civ. Code § 52.1;

5. Punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct; and,

6. For reasonable attorneys' fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205; California Civil Code § 52.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

Dated:   December 1, 2020            **MANNING LAW, APC**

By: /s/ *Joseph R. Manning, Jr.*
Joseph R. Manning, Jr., Esq.
Attorney for Plaintiff